774

651 A.2d 465

**STATE of Maryland**

v.

**Raymond James BRINKLEY.**

**No. 742, September Term, 1994.**

Court of Special Appeals of Maryland.

Jan. 5, 1995.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Andrew L. Sonner, State's Atty. for Montgomery County, Rockville, on the brief), for appellant.

Denise Oakes Shaffer and Laurence A. Tosi, Washington, DC, for appellee.

Before WILNER, C.J., and ALPERT, JAMES P. SALMON (Specially Assigned), JJ.

ALPERT, Judge.

In this appeal, we are called upon to decide whether the crime of carrying a concealed weapon may be accomplished when the accused is on private property.

Appellee, Raymond James Brinkley, was a guest at 2308 McAuliffe Drive in Montgomery County when officers of the Maryland–National Capital Park Police executed a search warrant at the premises. During the search, the officers performed a pat-down of Brinkley's outer clothing and discovered a straight blade knife inside his left boot. Appellee was charged with carrying a concealed weapon in violation of Article 27, section 36 and various drug-related offenses. On April 12, 1994, the trial court granted appellee's motion to dismiss the section 36 charge. The court ruled that section 36 does not prohibit the carrying of a concealed weapon when the

defendant is in a private residence.[1] The remaining drug-related charges were nolle prossed by the State. This appeal followed.

## Discussion

The State contends that the trial court erred in construing section 36 as inapplicable when a defendant is situated on private property. The State argues that the statute's plain language and its legislative history demonstrate that the crime of carrying a concealed weapon applies equally in both public places and on private property. Appellee contends, on the other hand, that applying section 36 to private property is inconsistent with the legislative history of the statute and its underlying purposes.

### I.

In examining the legislative history of Maryland's concealed weapons statute, our primary objective is to ascertain the intent of the legislature in enacting section 36. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 513–14, 525 A.2d 628 (1987). The starting point in this endeavor is the language of the statute itself. Section 36 provides:

> Every person who shall wear or carry any dirk knife, bowie knife, switchblade knife ... or any other dangerous or deadly weapon of any kind, whatsoever ... concealed upon or about his person, and every person who shall wear or carry any such weapon ... with the intent or purpose of injuring any person in any unlawful manner, shall be guilty of a misdemeanor....

Md.Ann.Code art. 27 § 36(a)(1) (Supp.1994).

The operative language of section 36 has remained essentially unchanged since the statute was first enacted in 1886.[2] At no time in the statute's long history has the

---

1. The State stipulated that 2308 McAuliffe Drive is a private residence.

2. In 1886, the statute provided:

legislature seen fit to express any limitation on where a defendant must be situated when carrying a concealed weapon. The plain language of section 36, therefore, supports the interpretation that the statute was intended to apply universally, to both public and private property.

In 1894, the General Assembly amended the statute to exclude those persons carrying a concealed weapon "for any proper purpose of self-protection" and "as a reasonable precaution against apprehended danger." 1894 Md.Laws ch. 547. In the preamble to this amendment, the legislature stated:

It is represented to this General Assembly that the existing law in reference to the offense of carrying concealed weapons does not make proper discrimination in favor of those *who travel in dangerous localities, or from other imminent necessity, or prudent precaution in the presence of threatened injury to their lives or persons,* may reasonably arm themselves for self-protection; and the law has been made an instrument of injustice to those not deserving of punishment. . . .

(emphasis added).

This exception is currently embodied in subsection (f) of section 36, which provides:

(f) *Exceptions.*—Nothing in this section shall be construed to prevent the carrying of any of the weapons mentioned in subsections (a) and (b) of this section by:

\*     \*     \*     \*     \*     \*

Every person not being a conservator of the peace entitled or required to carry such weapon as a part of his official equipment, who shall wear or carry any pistol, dirk-knife, bowie-knife, slung-shot, billy, sand-club, metal knuckles, razor or any other dangerous or deadly weapon of any kind whatsoever, (penknives excepted) concealed upon or about his person, and every person who shall carry or wear any such weapon openly with the intent or purpose of injuring any person, shall, upon conviction thereof, be fined not more than five hundred dollars or be imprisoned not more than six months in jail or the House or Correction.
1886 Md.Laws ch. 375.

(4) Any person *who shall carry such weapon as a reasonable precaution against apprehended danger,* but the tribunal before which any case arising under the provisions of this section may be tried, shall have the right to judge of the reasonableness of the carrying of any such weapon, and the proper occasion therefor, under the evidence in the case.

Appellee contends that this amendment to the original statute indicates that the General Assembly intended for section 36 to apply only to persons travelling on public streets and in other public meeting places, and not to citizens on private property engaged in protecting their homes and families.

We recognize the public safety function served by section 36. Indeed, the Court of Appeals has recognized two purposes underlying Maryland's concealed weapons statute, and other statutes like it:

Criminal statutes dealing with concealed weapons serve two related purposes. First they seek to protect the public by deterring persons from concealing on or about their persons weapons of which the public would be unaware, thereby preventing injury or death to unsuspecting members of the public. Second, these statutes protect the wearers or carriers of weapons from themselves, by attempting to deter persons from having at hand weapons that could be used in the heat of passion.

*Anderson v. State,* 328 Md. 426, 432, 614 A.2d 963 (1992) (citations omitted).

In our view, application of section 36 to private property is not inconsistent with these dual purposes cited by the Court of Appeals. Applying section 36 to private property would protect those "unsuspecting members of the public" who find themselves on private property when a dangerous or deadly weapon, previously concealed, is wielded at them. There is no reason to believe that members of the public do not require protection from concealed weapons simply because they are

situated on private property.[3] We believe section 36 was enacted to protect members of the public generally, whether they be located on private property or on a public street.

■ We also disagree with appellee's contention that application of section 36 to private property would lead to absurd results. Appellee postulates, for example, that under the State's interpretation of section 36, a person who places a knife in his or her apron while preparing a meal would violate the statute. This argument is specious at best. In order to violate section 36, it must first be determined by the trier of fact whether the instrument used by the defendant constitutes a "dangerous or deadly weapon." *Anderson*, 328 Md. at 438, 614 A.2d 963. This determination is made not simply on the basis that the instrument *may* be used to inflict serious or deadly harm upon another person. It must be shown that the defendant had at least the "general intent" to carry the instrument for use as a weapon. *Id.*[4] According to the Court, this "is a question of fact[ ] to be decided based on all of the circumstances." *Id.*

Therefore, we are unable to say, in the context of a motion to dismiss, whether appellee's purpose for carrying the knife was innocuous and would not, as a matter of law, be covered under section 36. The "location" of the defendant, including whether he or she is in a public place or on private property, is simply one factor for the trier of fact to consider in its determination of whether the defendant has the requisite general intent to commit the offense and whether the instrument in his or her possession would be covered under section 36.

---

**3.** In the case *sub judice*, the State proffered that there were seven people, other than appellee, present in the house when the officers executed the search warrant.

**4.** The Court in *Anderson* described this "general intent" as the "intent merely [ ] to display the knife in the belief that the display will deter aggressors, without any intent to inflict bodily injury." *Id.* at 439, 614 A.2d 963.

## II.

In *Harrod v. State*, 65 Md.App. 128, 139, 499 A.2d 959 (1985), we were confronted with the issue of whether section 36's companion crime—carrying a dangerous or deadly weapon "openly with the intent or purpose of injuring any person"—could be committed when a person is inside his own home. The defendant in *Harrod* had swung a hammer and knife in the direction of his wife and her male friend while in his house. *Id.* at 131–32, 499 A.2d 959. He was convicted of both assault and carrying a deadly and dangerous weapon. *Id.* at 131, 499 A.2d 959. On appeal, he argued that the "private property" exception provided for in section 36B,[5] which on its face applies only to handguns, should be applied to section 36. *Id.* at 139, 499 A.2d 959. We disagreed and stated:

> The language of § 36 is clear and we need not look elsewhere to ascertain its intent.... Subsection (d) provides a list of exceptions, none of which apply to [the defendant], and we are prohibited from inserting any.

*Id.* at 139–40, 499 A.2d 959.

In the present case, we likewise refuse to read a "private property" exception into section 36's prohibition against the carrying of a concealed weapon. Section 36 is plain and unambiguous and makes no exception for the locality of the defendant. The legislature could have provided for a "private property" exception in section 36, as it did in section 36B for handguns.[6] Its failure to do so is, we believe, strong

---

**5.** Section 36B of Article 27 prohibits the wearing, carrying or transporting of handguns, whether concealed or open. Subsection (c)(4) of 36B provides:

Nothing in this section shall prevent a person from wearing, carrying, or transporting a handgun *within the confines of real estate owned or leased by him or upon which he resides* or within the confines of a business establishment owned or leased by him.
Md.Ann.Code art. 27, § 36B(c)(4) (Repl.Vol.1992).

**6.** The only exceptions provided for in section 36 are those expressly set forth in subsection (f), which provides:

evidence that no such exception was contemplated by the General Assembly. Where a statute sets forth specific exceptions, others should not be added by the courts. *Pennsylvania Nat'l Mutual Casualty Ins. Co. v. Gartelman*, 288 Md. 151, 156, 416 A.2d 734 (1980).

We note, by way of analogy, that application of section 36 has been extended to the interior of an automobile. *Shipley v. State*, 243 Md. 262, 269, 220 A.2d 585 (1966); *Davis v. State*, 202 Md. 463, 97 A.2d 303 (1953); *Wood v. State*, 192 Md. 643, 650–51, 65 A.2d 316 (1949); *Smith v. State*, 18 Md.App. 612, 615–17, 308 A.2d 442 (1973). We see no discernible difference between an automobile and a private residence with regard to the purposes served by the statute. In both circumstances, the location of the defendant at the time he or she is carrying or wearing a concealed weapon is just one factor to be considered in determining whether section 36 has been violated.

### III.

Our interpretation of section 36 is in accord with those decisions in numerous other states that have construed similar

---

(f) *Exceptions.*—Nothing in this section shall be construed to prevent the carrying of any of the weapons mentioned in subsections (a) and (b) of this section by:

(1) An officer of this State, or of any county or city, who is entitled or required to carry such weapon as part of the officer's official equipment, or by any conservator of the peace, who is entitled or required to carry such weapon as part of the conservator's official equipment, or by any officer or conservator of the peace of some other state temporarily sojourning in this State;

(2) Any special agent of a railway;

(3) Any person to whom a permit to carry a concealed weapon has been issued under § 36E of this article; or

(4) Any person who shall carry such weapon as a reasonable precaution against apprehended danger, but the tribunal before which any case arising under the provisions of this section may be tried, shall have the right to judge of the reasonableness of the carrying of any such weapon, and the proper occasion therefor, under the evidence in the case.

concealed weapons statutes. *Dunston v. State,* 124 Ala. 89, 27
So. 333, 334 (1900) (interpreting Alabama statute as applying
to concealed pistol found on defendant in his home); *State v.
Gagliota,* 123 A. 183 (Del.1923) (construing Delaware con-
cealed weapons statute as applying in the defendant's home);
*Brown v. State,* 114 Ga. 60, 39 S.E. 873 (1901) (holding that
Georgia's concealed weapons statute covered carrying of con-
cealed pistol by the defendant within his own home); *Com-
monwealth v. Puckett,* 277 Ky. 131, 125 S.W.2d 1011, 1012
(1939) (construing Kentucky concealed weapons statute as
applicable to boarding house or private residence); *State v.
Venable,* 117 Mo.App. 501, 93 S.W. 356, 357 (1906) (holding
that under Missouri's concealed weapons statute, defendant
did not have right to carry concealed weapon on his farm);
*People v. Demorio,* 123 A.D. 665, 108 N.Y.S. 24, 24–25 (1908)
(holding that New York's concealed weapons statute applied
when weapon found on defendant in curtilage of bar owned by
him); *State v. Nieto,* 101 Ohio St. 409, 130 N.E. 663, 664 (1920)
(upholding application of Ohio's concealed weapons statute to
defendant found with pistol at bunkhouse of his employer);
*Pierce v. State,* 42 Okla.Crim. 272, 275 P. 393, 394–95 (App.
1929) (holding Oklahoma concealed weapons statute applicable
against defendant in his own home in absence of exception
that applies).

We find particularly persuasive the comments of the Su-
preme Court of Alabama in *Dunston,* 27 So. at 334:

Neither by the letter nor by the spirit of the statute
prohibiting the carrying of weapons concealed about the
person is any exception created in favor of place. One of
the objects of the law is the avoidance of bad influences
which the wearing of a concealed deadly weapon may exert
upon the wearer himself, and which in that way, as well as
by the weapon's obscured convenience for use, may tend to
the insecurity of other persons. The mental suggestions
which proceed from constant contact with weapons specially
adapted to, and usually worn for the purpose of, inflicting

bodily harm to persons, may come as well when the wearer is in his domicile as elsewhere.

(citations omitted).

Some jurisdictions have expressly provided for a "private property" exception in their concealed weapons statute. The District of Columbia, for example, has enacted a statute providing that "No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol ... or any deadly or dangerous weapon capable of being so concealed." D.C.Code Ann. § 22–3204 (1989). The D.C. courts have interpreted this statute strictly and require that the defendant have some type of possessory interest in the property on which he or she is arrested in order for the exception to apply. *Fortune v. United States,* 570 A.2d 809, 811 (D.C.1990). The Maryland legislature, in contrast, has not chosen to apply this exception to dangerous or deadly weapons generally, but only to the wearing, carrying, or transporting of handguns. Md.Ann. Code art. 27, section 36B (Repl.Vol.1989).

## IV.

Our literal reading of section 36 comports with the legislative history of the statute and its underlying purposes. Had the legislature intended section 36 to be limited as appellee suggests, we believe it would have expressly done so. We therefore reverse the decision of the trial court and remand the case for trial.

REVERSED; REMANDED TO CIRCUIT COURT FOR MONTGOMERY COUNTY FOR TRIAL. COSTS TO BE PAID BY APPELLEE.